# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Rachael Joseph, | Case No. 26-cv-18 (JWB/SGE) |
| Plaintiffs, | |
| vs. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS** |
| Department of Public Safety, et al., | |
| Defendants. | |

In this employment case, Plaintiff Rachael Joseph asserts claims against her former employer, the Minnesota Department of Public Safety ("DPS") and its Commissioner, Bob Jacobson in his official and individual capacities (collectively "Defendants"). Plaintiff brings a claim for First Amendment retaliation pursuant to 42 U.SC. § 1983 (Count II), as well as several claims under state law including[1] Minn. Stat. § 609.748 for harassment restraining order retaliation (Count III), Minn. Stat. § 181.9455 for sick-and-safe-time retaliation (Count IV), and Minn. Stat. § 363A.01, *et seq*, for disability discrimination (Count V).

Defendants move for dismissal of Plaintiff's counts II through V pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's First Amendment claim should be dismissed based on sovereign immunity and lack of factual allegations sufficient to name Commissioner Jacobson in his individual capacity. Plaintiff's state law counts III through V should be dismissed as they lack sufficient facts to state a plausible claim for relief.

---

[1] Defendants do not move to dismiss Count I of the Complaint, alleging retaliation pursuant to the Minnesota Whistleblower Act, at Minn. Stat. § 181.931, *et seq*.

# STATEMENT OF FACTS

Defendants base the following recitation of facts on Plaintiff's complaint but reserve the right to deny any and all of these allegations and to plead all applicable defenses should any claim survive this motion.

Plaintiff was employed with DPS in the position of Extreme Risk Protection Order ("ERPO") Coordinator for approximately twenty-seven days, from August 13, 2025 through September 9, 2025. (Compl. ¶¶ 29, 48-50.) An Extreme Risk Protection Order is a judicial order that may be issued upon a showing that a person "poses a significant danger of bodily harm to other persons or is at significant risk of suicide by possessing a firearm." (Minn. Stat. § 624.7171, subd. 4(c); Compl. ¶ 20.) The ERPO Coordinator position is required to provide statewide coordination and support for Minnesota's ERPO law. (Compl. ¶ 21.)

Before her employment with DPS, Plaintiff worked on gun safety issues including drafting, consulting, opposing, supporting, and testifying on legislation. (Compl. ¶ 19.) She engaged in public debate regarding gun violence legislation on social media, in editorials, and at rallies. (*Id.*) Plaintiff alleges she suffers from PTSD as a result of a family history with gun violence. (*Id.* ¶ 16.) This family history also motivates her involvement in the issue. (*Id.* ¶¶ 17-18.)

The non-profit association Minnesota Gun Owners Caucus, its leadership, and its followers have considered Plaintiff their political opponent well before her employment with DPS. (*Id.* ¶¶ 31-32.) Shortly after beginning work as the ERPO coordinator, Plaintiff alleges Minnesota Gun Owners Caucus began a defamatory campaign against her to get her fired from DPS approximately August 31, 2025. (*Id.* ¶ 34.) The "campaign" consisted of online

comments about Plaintiff which were offensive and/or violent. (*Id.* ¶¶ 38, 44.) When she discovered the campaign on or about August 31, Plaintiff alerted her "superiors at DPS." (*Id.* ¶ 36.) Plaintiff does not allege she alerted Commissioner Jacobson personally. (*Id.*) When he learned about the campaign, Plaintiff alleges Commissioner Jacobson said, "Well that's interesting." (*Id.* ¶ 37.)

Again, on September 8, Plaintiff let "her superiors at DPS" know about her concerns with Minnesota Gun Owners Caucus and she let them know that she was "in the process of seeking an attorney for assistance." (*Id.* ¶ 39.) That same day, Plaintiff also relayed her concerns about the campaign to DPS Human Resources and the Minnesota Attorney General's Office. (*Id.* ¶ 45.) Plaintiff does not allege she alerted Commissioner Jacobson personally. (*Id.*) Plaintiff filed a petition for a harassment restraining order (HRO) against the Minnesota Gun Owners Caucus. (*Id.* ¶ 46.)

On September 9, Plaintiff informed DPS that she was planning to work from home while waiting for a decision on her HRO petition. (*Id.* ¶ 48.) At 2:30 pm that day, DPS Director of the Office of Justice Programs met with Plaintiff and notified her that her employment was terminated for "an inability to build relationships with partners." (*Id.* ¶ 49-51.)

I. **PROCEDURAL HISTORY.**

Plaintiff initiated suit by pocket-serving the summons and complaint on DPS and Commissioner Jacobson in his official capacity on December 10, 2025. Service was accomplished by agreement on the Commissioner in his individual capacity on December 12, 2025. The case was venued in Ramsey County District Court but was not filed. No other

pleadings were served or filed by any party. On January 2, 2026, Defendants filed a Notice of Removal and supporting documents seeking removal to this Court.

## LEGAL STANDARDS

A party may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1). If subject matter jurisdiction is lacking over a claim, the claim must be dismissed. Fed. R. Civ. P. 12(b)(1), 12(h)(3); *see also Benter v. U.S. Soc. Sec. Admin. Field Office – Bemidji*, No. 14-130, 2014 WL 5307634, at *2 (D. Minn. Oct. 16, 2014) ("Jurisdiction is a threshold issue, and 'judicial economy demands that the issue be decided at the outset' of the case.") (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage of the litigation, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in Scheffler's favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of

factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2020) (internal quotations omitted). The Court must undertake the "context-specific task" of determining whether Scheffler's allegations "nudge" their claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678-81 (internal quotations omitted).

## ARGUMENT

Counts II through V should be dismissed for four reasons. First, Plaintiff's First Amendment Retaliation Claim should be dismissed because the claim against DPS and Commissioner Jacobson in his official capacity is barred by sovereign immunity. And the First Amendment Retaliation Claim against Commissioner Jacobson in his individual capacity fails for lack of facial plausibility as to his personal involvement. Second, Plaintiff fails to state a claim for harassment restraining order retaliation. Third, Plaintiff fails to state a claim for sick and safe time retaliation. And fourth, Plaintiff fails to state a claim for disability discrimination.

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION.

Count II alleges First Amendment Retaliation in violation of 42 U.S.C. § 1983 against DPS and Commissioner Jacobson in his official and individual capacities. Plaintiff alleges that she was terminated for exercising her right to free speech under the First Amendment. (Compl. ¶ 70.) This claim must be dismissed in its entirety for the following reasons.

#### A. Sovereign Immunity Bars Plaintiff's Section 1983 Claim Against DPS and Commissioner Jacobson.

The Eleventh Amendment bars Plaintiff's Section 1983 claim for First Amendment Retaliation against DPS and Commissioner Jacobson in his official capacity. Sovereign

immunity protects states from suit in federal court unless a state has consented to be sued or Congress has expressly abrogated a state's immunity. *See* U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Absent an exception to sovereign immunity, federal courts lack jurisdiction over federal and state-law claims against unconsenting states. *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968–69 (8th Cir. 2000).

Section 1983 imposes liability on any "person" who deprives another of constitutional rights. *See* 42 U.S.C. § 1983. But Congress did not abrogate state sovereign immunity under Section 1983. *Burke v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). Therefore, a state agency and an officer acting in their official capacity are not "person[s]" subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Raymond v. Bd of Regents Univ. of Minnesota*, 140 F. Supp.3d 807, 813 (D. Minn. 2015) (dismissing Section 1983 claim against the University of Minnesota because it was a state agency). Thus, Plaintiff's Section 1983 claim for First Amendment Retaliation against DPS and Commissioner Jacobson in his official capacity must be dismissed.

**B.    Plaintiff Fails To Allege Any Individual Actions By Commissioner Jacobson to Support her Individual-Capacity Section 1983 Claim.**

Plaintiff's Section 1983 claim against Commissioner Jacobson in his individual capacity must also be dismissed. For Section 1983 liability to attach, Plaintiff must "show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *Quarishi v. St. Charles Cnty.*, 986 F.3d 831, 837 (8th Cir. 2021). In other words, Section 1983 liability must be premised on an official's "own

individual actions." *Iqbal*, 556 U.S. 662, 676 (2009). Supervisory status on its own is not enough. *Molina v. City of St. Louis, Missouri*, 59 F.4th 334, 344 (8th Cir. 2023), *cert. denied sub nom. Molina v. Book*, 144 S. Ct. 1000 (2024). Section 1983 liability is personal. A government official "cannot be held liable under Section 1983 for the wrongdoing of others." *McNeally v. HomeTown Bank*, 155 F.4th 1000, 1009 (8th Cir. 2025).

Plaintiff plainly fails to meet that standard regarding Commissioner Jacobson. Plaintiff's First Amendment Retaliation claim is based on her termination, but Plaintiff does not allege that Commissioner Jacobson was personally involved in that decision whatsoever. In fact, Plaintiff's complaint contains merely a *single* factual allegation about Commissioner Jacobson—that when he learned about the alleged campaign by Minnesota Gun Owners Caucus to get Plaintiff terminated, "he reacted by saying, 'Well that's interesting.'" (Compl. ¶ 37.)[2] But he made this alleged statement nearly two weeks before Plaintiff was terminated. (*Id.* ¶¶ 34, 36-37.) Commissioner Jacobson's knowledge of or comment on the alleged campaign is not sufficient to show that he personally retaliated against Plaintiff. *McNeally*, 155 F. 4th at 1009. Plaintiff was terminated by DPS' Director of the Office of Justice Programs. (Compl. ¶¶ 49-50.) Plaintiff alleges no facts from which it can be plausibly inferred that Commissioner Jacobson had the requisite personal involvement in her termination. *See, e.g. id.* ¶¶ 48-52; *Iqbal*, 556 U.S. at 678; *White*, 865 F.3d at 1081. Plaintiff's individual-capacity

---

[2] As part of Count II, Plaintiff alleges that "Defendant was Plaintiff's employer." (Compl. ¶ 69.) Since Plaintiff brings brought Count II against both DPS and Commissioner Jacboson, it is unclear which "Defendant" Plaintiff is referring to. But even if Plaintiff alleges that Commissioner Jacobson was her "employer" that is insufficient to state claim because respondeat superior is not a recognized basis for liability under Section 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997).

claim against Commissioner Jacobson must be dismissed because it fails to meet the plausibility bar.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR HARASSMENT RESTRAINING ORDER RETALIATION.

Plaintiff's count III, brought against DPS only, for harassment restraining order retaliation in violation of Minn. Stat. § 609.748, should be dismissed because she has not plausibly alleged she engaged in activity protected by the statute. Employers may not:

> discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment, because the employee took reasonable *time off from work* to obtain or attempt to obtain relief under this section.

Minn. Stat. § 609.748, subd. 10(a) (emphasis added). In other words, employers cannot retaliate against employees who did not work for a reasonable time in order to obtain or attempt to obtain a harassment restraining order (HRO). Plaintiff states, incorrectly, that the statute protects employees who exercise, "or entertain exercising" their right to take time away from work to pursue an HRO. (Compl. ¶ 76.) By its plain language the statute does not protect employees unless they actually take reasonable "time off from work" to pursue an HRO.

Plaintiff's claim fails because she did not plausibly allege she took time off from work to pursue an HRO as required by the plain language of the statute. At no time does Plaintiff allege she took time off from work; she alleges she "informed DPS that she was planning to *work from home* while waiting for a decision on her petition for an HRO." (Compl. ¶ 48.) Viewed in the context of the modern professional workplace in 2025, where working remotely from home is commonplace, it cannot be reasonably inferred that plaintiff took "time off from

8

work" when she alleged she would work from home. (*Id.*); *Iqbal*, 556 U.S. at 678. This failure is not saved by the conclusory statement in the recitation of the claim that "[a]s alleged herein, Plaintiff exercised, or entertained exercising, her right to take time away from work to pursue an HRO" because there is no factual context at all to support it. (*See* Compl. ¶ 78.) Further, the only other allegation referencing an HRO states simply that "Plaintiff filed a petition for [an HRO] against the Gun Owners Caucus" and lacks any factual context from which it could be reasonably inferred that Plaintiff took "time off from work" to file the petition, or that DPS knew she took time off of work to file the petition. Notably, Plaintiff also does not allege she told DPS 48 hours in advance that she intended to take time off of work to obtain an HRO as required by the statute. *See* Minn. Stat. § 609.748, subd. 10(a) ("Except in cases of imminent danger to the health or safety of the employee or the employee's child, or unless impracticable, an employee who is absent from the workplace shall give 48 hours' advance notice to the employer.") The complaint lacks sufficient factual matter to reasonably infer Plaintiff engaged in protected activity pursuant to the plain language of section 609.748, subd. 10(a) or that DPS was aware she did.

Further, Plaintiff has not plausibly suggested that DPS terminated her because she took time off from work to pursue an HRO. In *Iqbal*, which is instructive here, the Supreme Court rejected a complaint that federal officials discriminated against a detainee by purposefully classifying him as "high interest," based on protected characteristics. 556 U.S. at 681. Plaintiff attempted to plead a claim for discrimination by alleging that federal officials acted "solely on account of [his] religion, race, and/or national origin." *Id.* at 680 (alteration original). The Court concluded that these allegations were insufficient because they did not plausibly

9

suggest that the federal officials acted with a discriminatory state of mind, as opposed to the equally likely, but legal, motive of national security. *Id.* at 682-83. Without reference to "factual context," the Court found the plaintiff's allegations to be "conclusory statements" that it could not credit. *Id.* at 686. Similarly, here the assertion that DPS "fired Plaintiff because she exercised, or entertained exercising, her right to take time away from work to pursue an HRO" (Compl. ¶ 79) is conclusory and lacks sufficient factual context to infer that DPS terminated Plaintiff because she took time off from work to pursue an HRO, rather than an equally likely, but legal, motive such as her inability to build relationships with community partners. (Compl. ¶¶ 21, 51.)

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR SICK-AND-SAFE-TIME RETALIATION.

Also fatally defective is Plaintiff's count IV, alleging DPS violated Minnesota's earned sick and safe time retaliation law. This is because the complaint completely lacks any factual material relating to sick and safe time. Section 181.9445 makes it illegal for an employer to:

> discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against a person *because the person has exercised or attempted to exercise rights* protected under this act, including but not limited to because the person requested earned sick and safe time, used earned sick and safe time, requested a statement of accrued sick and safe time, informed any person of his or her potential rights under sections 181.9445 to 181.9448, made a complaint or filed an action to enforce a right to earned sick and safe time under this section, or is or was participating in any manner in an investigation, proceeding, or hearing under this chapter.

Minn. Stat. § 181.9447, subd. 6(a) (emphasis added). For an employee's activity to be protected, the plain language makes clear they must have either exercised or attempted to exercise rights related to earned sick and safe time. Again, Plaintiff states incorrectly that the statute protects employees who *entertain* exercising their right to take sick or safe time leave

10

from work. (Compl. ¶ 76.) But the statute only protects employees who either exercise or attempt to exercise their enumerated rights; not employees who merely think about doing so.

The complaint lacks any factual matter to make a reasonable inference that Plaintiff exercised or attempted to exercise her right to take earned sick and safe time. Indeed, the only time the phrase appears is in the recitation of the claim itself. (*See* Compl. ¶¶ 83-88.) There are no allegations Plaintiff asked to take, tried to take, or actually took earned sick and safe time. As discussed in section II, *supra*, there are no allegations Plaintiff even missed work; Plaintiff alleges she planned to work from home. (Compl. ¶ 48.) Again, the complaint is not saved by the conclusory, "naked assertion" in the claim that "[a]s alleged herein, Plaintiff exercised or entertained exercising, her right to take sick-or-safe-time leave from work." (Compl. ¶ 85); *Twombly*, 550 U.S. at 557. The complaint lacks sufficient factual detail to plausibly infer that Plaintiff engaged in conduct protected by Minn. Stat. § 181.9447, subd. 6(a).

Further, the complaint lacks sufficient factual allegations from which to draw a inference that DPS terminated Plaintiff *because* she exercised or attempted to exercise her right to take earned sick and safe time. Her complaint contains only conclusory statements that DPS terminated her employment for this reason, and it is devoid of facts which plausibly suggest DPS terminated her in violation of section 181.9447. *See Iqbal*, 556 U.S. at 682-83; (Compl. ¶ 85). Plaintiff's claim IV against DPS should be dismissed for failure to state a claim.

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR DISABILITY DISCRIMINATION UNDER THE MHRA.

Count V, brought against DPS only, also falters because Plaintiff did not plausibly plead disability discrimination prohibited by the Minnesota Human Rights Act (MHRA) at Minn. Stat. § 363A.08, subd. 2. The statute prohibits employers from discharging an employee because of disability. Minn. Stat. § 363A.08, subd. 2(2).

The Complaint fails to plausibly allege that DPS terminated Plaintiff's employment because of a disability. While PTSD may constitute a disability under the statute, there are no factual allegations connecting the dots between Plaintiff's PTSD and her employment at DPS. Plaintiff mentions that she developed PTSD related to gun violence after her aunt's death. (Compl. ¶ 16.) After paragraph 16, PTSD is never referenced again in the complaint. Plaintiff does not allege DPS knew she had PTSD (or any disability). Nor does she allege any facts which could give rise to an inference that DPS terminated her because of her PTSD (or any disability). And the "naked assertion" that DPS "regarded Plaintiff as having a disability" and "fired Plaintiff because of a disability" is not enough to draw any reasonable inferences in Plaintiff's favor. (Compl. ¶¶ 92); *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 686. Even worse, the bare recitation that DPS "fired Plaintiff because of a disability," (Compl. ¶ 93) is nearly identical to one this court[3] already found failed to meet the pleadings standard. *See Radcliffe v. Securian Fin. Grp., Inc.*, 906 F. Supp. 2d 874, 886 (D. Minn. 2012) ("Plaintiff's allegation that Defendant 'discriminat[ed] against her because of her disability' [] is the type of vague and conclusory allegation that does not pass muster under *Iqbal* and *Twombly,* absent

---

[3] Judge Nelson, Case No. 11–CV–3701 (SRN/TNL).

reference to a specific act of discrimination.") Because Plaintiff has not pled sufficient factual matter to draw reasonable inferences that DPS knew she suffered from PTSD and that DPS terminated her for that reason, count V should be dismissed.

## CONCLUSION

For these reasons, Defendants request that counts II through V against them be dismissed with prejudice and that judgment be entered accordingly.

Dated: January 7, 2026                  Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

 s/ Amanda Prutzman
AMANDA PRUTZMAN
Assistant Attorney General
Atty. Reg. No. 0389267

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1217 (Voice)
(651) 282-5832 (Fax)
Amanda.Prutzman@ag.state.mn.us

ATTORNEY FOR DEFENDANTS