## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Rachael Joseph,                                        Case No. 26-cv-18 (JWB/SGE)

        Plaintiff,

    vs.                                                **DEFENDANTS'**
**MEMORANDUM OF LAW IN**
**SUPPORT OF PARTIAL**
Department of Public Safety, et al.,              **MOTION TO DISMISS THE**
**AMENDED COMPLAINT**

        Defendants.

In this employment case, Plaintiff Rachael Joseph asserts claims against her former employer, the Minnesota Department of Public Safety ("DPS") and Commissioner Bob Jacobson, Jordan Haltaufderheid, Kim Babine, and Rebecca Rabb in their official and individual capacities (collectively "Defendants"). Plaintiff's amended complaint brings three claims,[1] Defendants move to dismiss Counts II and III, for First Amendment retaliation pursuant to 42 U.SC. § 1983 and for MHRA disability discrimination pursuant to Minn. Stat. § 363A.01, *et seq*., respectively.

Plaintiff's First Amendment claim (Count II) should be dismissed as it is barred by sovereign immunity and fails to state plausible allegations against the individual defendants. Plaintiff's MHRA claim (Count III) should be dismissed because the amended complaint fails to plausibly allege Defendants regarded her as having a disability as defined by statute or a causal connection between any such disability and her termination.

---

[1] Defendants do not move to dismiss Count I, alleging retaliation in violation of the Minnesota Whistleblower Act.

## STATEMENT OF FACTS

Defendants base the following recitation of facts on Plaintiff's complaint but reserve the right to deny any and all of these allegations and to plead all applicable defenses should any claim survive this motion.

Plaintiff was employed with DPS in the position of Extreme Risk Protection Order ("ERPO") Coordinator for approximately twenty-seven days, from August 13, 2025 through September 9, 2025. (Amend. Compl. ¶¶ 32, 52-54.) An Extreme Risk Protection Order is a judicial order that may be issued upon a showing that a person "poses a significant danger of bodily harm to other persons or is at significant risk of suicide by possessing a firearm." (Minn. Stat. § 624.7171, subd. 4(c); Amend. Compl. ¶ 23.) The ERPO Coordinator position is required to provide statewide coordination, education, and support for Minnesota's ERPO law. (Amend. Compl. ¶ 24.)

Before her employment with DPS, Plaintiff worked on gun safety issues including drafting, consulting, opposing, supporting, and testifying on legislation. (*Id.* ¶ 22.) She engaged in public debate regarding gun violence legislation on social media, in editorials, and at rallies. (*Id.*)  Plaintiff alleges she suffers from PTSD as a result of the murder of her aunt.  (*Id.* ¶ 19.) Plaintiff alleges in a footnote that her PTSD is "public knowledge." (*Id.* ¶ 19, n.1.) Her family history motivates her involvement in the issue of gun violence. (*Id.* ¶¶ 21-22.)

Plaintiff applied for the ERPO Coordinator position with DPS. (*Id.* ¶ 25.) She interviewed with Defendants Jordan Haltaufderheid and Rebecca Rabb, among others.

(*Id.* ¶¶ 26-27.) A topic of discussion during her hiring process at DPS was Plaintiff's "trauma" or "lived experience" relating to gun violence. (*Id.* ¶ 19, n.1.) During Plaintiff's first week on the job, DPS officials, including Defendants Rabb and Haltaufderheid, celebrated her expertise and "introduced her as having 'lived experience' relating to gun violence." (*Id.* ¶ 32.)

The non-profit association Minnesota Gun Owners Caucus, its leadership, and its followers have considered Plaintiff their political opponent well before her employment with DPS. (*Id.* ¶¶ 34-35.) Shortly after beginning work as the ERPO coordinator, Plaintiff alleges Minnesota Gun Owners Caucus began a defamatory campaign against her to get her fired from DPS approximately August 31, 2025. (*Id.* ¶ 37.) When she discovered the campaign on or about August 31, Plaintiff "alerted her superiors at DPS." (*Id.* ¶ 39.) Plaintiff does not allege she alerted Defendant Commissioner Jacobson, or Defendants Haltaufderheid, Babine, or Rabb, personally. (*Id.*) When Commissioner Jacobson learned about the campaign, Plaintiff alleges he said, "Well that's interesting." (*Id.* ¶ 40.)

On September 8, Plaintiff learned there were online comments about her which were offensive and/or violent. (*Id.* ¶ 42.) She "passed this information on to her superiors at DPS" and "let them know that" the situation Minnesota Gun Owners Caucus and its followers was escalating. (*Id.* ¶ 43.) Additional comments were posted about Plaintiff online. (*Id.* ¶ 42.) By end of day on September 8, Plaintiff relayed her concerns about the alleged Minnesota Gun Owners Caucus campaign to "superiors at DPS," DPS Human Resources, and the Minnesota Attorney General's Office. (*Id.* ¶ 49.) Plaintiff does not

allege that she alerted Defendants Jacobson, Haltaufderheid, Babine, or Rabb, personally. (*Id.*)

On September 9, Plaintiff "informed DPS" that she was planning to work from home while waiting for a decision on a petition for a harassment restraining order. (*Id.* ¶ 52.) A few hours later, Defendant Babine scheduled a virtual meeting with Plaintiff for 2:30 pm that day. (*Id.* ¶ 53.) At the meeting, Defendant Babine terminated Plaintiff's employment. (*Id.* ¶ 54.) When asked why, Babine responded, "DPS had concluded that Joseph has 'an **inability** to build relationships with partners." (*Id.* ¶ 55) (emphasis in original). Plaintiff alleges "on information and belief" that Defendant Babine did not terminate her or come up with a reason for terminating her alone, rather, Defendant Babine did so "at the direction of" "or, at a minimum, with the[] approval" of Defendants Rabb, Haltaufderheid, and Jacobson (*Id.* ¶¶ 58-59.) Plaintiff alleges DPS "appeared to have bought into the stereotype" that she was a "nutjob" with PTSD who has an inability to build relationships. (*Id.* ¶ 57.)

## I. PROCEDURAL HISTORY.

Plaintiff initiated suit by pocket-serving the summons and complaint on DPS and Commissioner Jacobson in his official capacity on December 10, 2025. Service was accomplished by agreement on the Commissioner in his individual capacity on December 12, 2025. The case was venued in Ramsey County District Court but was not filed. No other pleadings were served or filed by any party. On January 2, 2026, Defendants filed a Notice of Removal and supporting documents seeking removal to this Court.

Defendants filed a motion to dismiss on January 7, 2026. Plaintiff responded by filing and serving an Amended Complaint on January 27, 2026. Service on the newly named individual defendants, Jordan Haltaufderheid, Kim Babine, and Rebecca Rabb, was accomplished by agreement of the parties on February 4, 2026.

## LEGAL STANDARDS

A party may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1). If subject matter jurisdiction is lacking over a claim, the claim must be dismissed. Fed. R. Civ. P. 12(b)(1), 12(h)(3); *see also Benter v. U.S. Soc. Sec. Admin. Field Office – Bemidji*, No. 14-130, 2014 WL 5307634, at *2 (D. Minn. Oct. 16, 2014) ("Jurisdiction is a threshold issue, and 'judicial economy demands that the issue be decided at the outset' of the case.") (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage of the litigation, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in a plaintiff's favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2020) (internal quotations omitted). The Court must undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" their claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678-81 (internal quotations omitted).

## ARGUMENT

Counts II and III should be dismissed. Plaintiff's First Amendment Retaliation Claim should be dismissed for two reasons. First, because the claim against DPS and all individual defendants in their official capacities is barred by sovereign immunity. Second, the claim against the individual defendants in their individual capacities fails for lack of facial plausibility as to their personal involvement in terminating Plaintiff in violation of her constitutional rights.

Plaintiff's MHRA disability discrimination claim should be dismissed because it fails to plausibly allege DPS knew she had PTSD or terminated her because of her PTSD.

## I.    PLAINTIFF FAILS TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION.

Count II alleges First Amendment Retaliation in violation of 42 U.S.C. § 1983 against DPS and Defendants Commissioner Bob Jacobson, Jordan Haltaufderheid, Kim Babine, and Rebecca Rabb in their individual *and* official capacities.  (Amend. Compl., p. 13.) Specifically, Plaintiff alleges that she was terminated for exercising her

right to free speech under the First Amendment. (Compl. ¶ 81.) This claim must be dismissed in its entirety because sovereign immunity bars the claim and the facts alleged fail to state a claim against the individual defendants.

### A. Sovereign Immunity Bars Plaintiff's Section 1983 Claim Against DPS and all Official Capacity Individual Defendants.

The Eleventh Amendment bars Plaintiff's Section 1983 claim for First Amendment Retaliation against DPS and individual Defendants Jacobson, Haltaufderheid, Babine, and Rabb in their official capacities. Sovereign immunity protects states from suit in federal court unless a state has consented to be sued or Congress has expressly abrogated a state's immunity. *See* U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Absent an exception to sovereign immunity, federal courts lack jurisdiction over federal and state-law claims against unconsenting states. *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968–69 (8th Cir. 2000).

Section 1983 imposes liability on any "person" who deprives another of constitutional rights. *See* 42 U.S.C. § 1983. But Congress did not abrogate state sovereign immunity under Section 1983. *Burke v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). Therefore, a state agency and an officer acting in their official capacity are not "person[s]" subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Raymond v. Bd of Regents Univ. of Minnesota*, 140 F. Supp.3d 807, 813 (D. Minn. 2015) (dismissing Section 1983 claim against the University of Minnesota because it was a state agency).

The doctrine of *Ex parte Young* is "a narrow exception" to sovereign immunity. *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 858 (8th Cir. 2024). There are two requirements to meet the *Ex Parte Young* exception. First, the plaintiff must "allege[ ] an ongoing violation of federal law." *281 Care Comm. v. Arneson* (*281 Care Comm. I*), 638 F.3d 621, 632 (8th Cir. 2011) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)). Second, the plaintiff must be seeking prospective relief. *Filyaw v. Corsi*, 150 F.4th 936, 941 (8th Cir. 2025), *cert. denied*, No. 25-491, 2026 WL 135759 (U.S. Jan. 20, 2026).

Neither requirement for the *Ex parte Young* exception is met here. Plaintiff does not allege an ongoing violation of law (her employment was terminated), nor does she seek prospective injunctive relief (she seeks legal damages). Thus, Plaintiff's Section 1983 claim for First Amendment Retaliation against DPS and all official capacity individual defendants is barred by Eleventh Amendment sovereign immunity and must be dismissed.

**B.     Plaintiff Fails To Allege Individual Actions Against the Individual Defendants Sufficient to Support her Individual-Capacity Section 1983 Claim.**

Plaintiff's Section 1983 claims against all defendants in their individual capacities must also be dismissed. For Section 1983 liability to attach, Plaintiff must "show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017); *Quarishi v. St. Charles Cnty.*, 986 F.3d 831, 837 (8th Cir. 2021). In other words, Section 1983 liability must be premised on an official's "own individual actions." *Iqbal*, 556 U.S. 662, 676 (2009). Supervisory status on its own

8

is not enough. *Molina v. City of St. Louis, Missouri*, 59 F.4th 334, 344 (8th Cir. 2023), *cert. denied sub nom. Molina v. Book*, 144 S. Ct. 1000 (2024). Section 1983 liability is personal. A government official "cannot be held liable under Section 1983 for the wrongdoing of others." *McNeally v. HomeTown Bank*, 155 F.4th 1000, 1009 (8th Cir. 2025).

Plaintiff alleges "Defendants fired Plaintiff because she exercised her right to free speech under the First Amendment," which was, specifically, "speaking on matters of public concern relating to legislation and public policy on gun violence." (Amend. Compl. ¶¶ 85, 83.) This speech occurred before Plaintiff was hired; Plaintiff does not allege she engaged in any protected speech after she began her employment. (*See* ¶¶ 22, 29.) Each individual defendant is addressed in turn, below.

As to Commissioner Jacobson, Plaintiff plainly fails to plead his individual involvement as required. Although her First Amendment Retaliation claim is based on her termination, Plaintiff does not plausibly allege that Commissioner Jacobson was personally involved in that decision whatsoever. Plaintiff's complaint contains three allegations mentioning Jacobson and none set forth a factual basis for his involvement in her termination. First, she alleges when he learned about the alleged campaign by Minnesota Gun Owners Caucus against her, "he reacted by saying, 'Well that's interesting.'" (Amended Compl. ¶ 40.) But he made this alleged statement nearly two weeks before Plaintiff was terminated. (*Id.* ¶¶ 37-40, 52-54.) Commissioner Jacobson's knowledge of or comment on the alleged campaign is not sufficient to show that he personally retaliated against Plaintiff. *McNeally*, 155 F. 4th at 1009. Plaintiff was not terminated by

Commissioner Jacobson (*Id.* ¶ 54.) Next she makes two allegations based only "upon information and belief" that Jacobson (or others) directed Defendant Babine to terminate Plaintiff and come up with a purported reason. (*Id.* ¶¶ 58-59.) These threadbare allegations fail to pass the plausibility bar because they are stated on "information and belief" without any identification of factual bases for the belief. *Cole v. Does*, 571 F. Supp. 3d 1033, 1040 (D. Minn. 2021) (Schiltz, J.) *citing Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009).Plaintiff alleges no facts from which it can be plausibly inferred that Commissioner Jacobson had the requisite personal involvement in her termination, let alone that he terminated her because of her protected speech. *See, e.g. id.* ¶¶ 48-52; *Iqbal*, 556 U.S. at 678; *White*, 865 F.3d at 1081. And respondeat superior is not a recognized basis for liability under Section 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997).

Similarly, the claim against Defendant Jordan Haltaufderheid fails for lack of plausible allegations of the requisite personal involvement. Haltaufderheid is DPS Chief of Staff. (Amend. Compl. ¶ 26.) Plaintiff interviewed with Haltaufderheid, she was hired, and then he expressed how glad he was to have Plaintiff on board after she started the job. (*Id.* ¶¶ 26, 32.)   Haltaufderheid was aware of the alleged campaign by the Gun Owners' Caucus but did not comment on it. (*Id.* ¶¶ 44-45). Haltaufderheid did not terminate Plaintiff's employment or tell Plaintiff that she had "an inability to build relationships with partners." (*Id.* ¶¶ 53-56.) Plaintiff alleges, based "on information and belief" only, that she was terminated at Haltaufderheid's direction. (*Id.* ¶ 58.) She also alleges "on information and belief" only, that Haltaufderheid directed "or, at a minimum" approved the purported

reason for terminating Plaintiff. (*Id.* ¶ 59.) There is no plausible basis to infer that Haltaufderheid terminated Plaintiff because of her protected speech, as required to state the claim. *Henry v. Johnson*, 950 F.3d 1005, 1014 (8th Cir. 2020). Her speech occurred *before* she was hired, Haltaufderheid was aware of her speech before she was hired, and then *after* she was hired said he was glad to have her at DPS. (*Id.* ¶¶ 83, 22, 27, 29-30, 32.) It is not plausible that Haltaufderheid terminated Plaintiff because of her protected speech when he was involved in her hiring with knowledge of it and positively commented on it. *See Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 174 (8th Cir. 1992) (stating, in age discrimination case, the "most important fact here is that plaintiff was a member of the protected age group both at the time of his hiring and at the time of his firing, and that the same people who hired him also fired him.") Additionally, the allegations that Haltaufderheid (or others) directed Defendant Babine to terminate Plaintiff and come up with a purported reason, fail to pass the plausibility bar because they are stated only "upon information and belief" and lack any identification of the factual bases for the belief. (*Id.* ¶¶ 58-59); *Cole*, 571 F. Supp. 3d 1040, *citing Drobnak*, 561 F.3d at 784. Plaintiff alleges no facts from which it can be plausibly inferred that Haltaufderheid had the requisite personal involvement in her termination, let alone that he terminated her because of her protected speech. *See*, *e.g. id.* ¶¶ 48-52; *Iqbal*, 556 U.S. at 678; *White*, 865 F.3d at 1081.

Likewise, the claim against Defendant Kim Babine fails to plausibly allege she terminated Plaintiff for her protected speech. Babine is the Director of the Office of Justice

Programs. (Amend. Compl. ¶ 6.) She scheduled the virtual meeting with Plaintiff the day of her termination and she terminated Plaintiff's employment. (*Id.* ¶¶ 53-56.) Plaintiff alleges, "on information and belief" that Babine terminated her employment and came up with a reason why at the direction of multiple individual defendants. (*Id.* ¶¶ 58-59). There are no other allegations regarding Babine in the Amended Complaint, indeed, Plaintiff admits Babine never spoke with her after welcoming her in August. (*Id.*¶ 54 n.3.) As such, there is no plausible basis to infer that Rabb terminated Plaintiff because of her protected speech. *Henry*, 950 F.3d at 1014. Plaintiff's speech occurred before she was hired, she was hired with knowledge of her speech, and then Babine (and others) welcomed her. *See Lowe*, 963 F.2d at 174. (Amend. Compl. ¶¶ 83, 22, 29, 30, 32.) There is no causal link alleged between her pre-employment speech and Babine's alleged act of terminating her employment. And, all allegations that Babine was directed to terminate her and make up a reason why fail because they are stated "upon information and belief" and lack any identification of the factual bases for that belief. (*Id.* ¶¶ 58-59); *Cole*, 571 F. Supp. 3d at 1040 *citing Drobnak*, 561 F.3d at 784.

Finally, as to Defendant Rebecca Rabb, the Amended Complaint also fails to show she terminated Plaintiff for her protected speech. Rabb is DPS' Deputy Director of External Relations. (*Id.* ¶¶ 26.) Plaintiff interviewed with Rabb twice. (*Id.* ¶¶26-27.) When Plaintiff started at DPS, Rabb celebrated Plaintiff's expertise and expressed how glad they were to have her on board. (*Id.*¶ 32.) Rabb did not terminate Plaintiff. (*Id.*¶¶ 53-54). Plaintiff alleges, based "on information and belief" only, that she was terminated at Rabb's direction.

(*Id.* ¶ 58.) Also only "on information and belief," she alleges Rabb directed "or, at a minimum" approved the purported reason for terminating Plaintiff. (*Id.* ¶ 59.) There is no plausible basis to infer that Rabb terminated Plaintiff because of her protected speech, as required to state the claim. *Henry v. Johnson*, 950 F.3d 1005, 1014 (8th Cir. 2020) Her speech occurred *before* she was hired, Rabb was aware of it before she was hired, and then Rob told her she was glad to have her on board after she started work at DPS. (*Id.* ¶¶ 83, 22, 27, 29-30, 32.) It is not plausible that Rabb terminated Plaintiff because of her protected speech when she hired her with knowledge of it and positively commented on it. *Lowe*, 963 F.2d at 174. Additionally, the allegations that Rabb (or others) directed Defendant Babine to terminate Plaintiff and come up with a purported reason why, fail to pass the plausibility bar because they are stated "upon information and belief" without any identification of the factual bases for the belief. (*Id.* ¶¶ 58-59); *Cole*, 571 F. Supp. 3d at 1040 *citing Drobnak*, 561 F.3d at 784. Plaintiff alleges no facts from which it can be plausibly inferred that Rabb had the requisite personal involvement in her termination, let alone that she terminated Plaintiff because of her protected speech. *See*, *e.g. id.* ¶¶ 48-52; *Iqbal*, 556 U.S. at 678; *White*, 865 F.3d at 1081.

For these reasons, Plaintiff has failed to state a claim against the individual defendants that they terminated her for exercising her right to free speech.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR DISABILITY DISCRIMINATION UNDER THE MHRA.

Count III, brought against all defendants, also falters because Plaintiff did not plausibly plead disability discrimination prohibited by the Minnesota Human Rights Act

(MHRA) at Minn. Stat. § 363A.08, subd. 2. The statute prohibits employers from discharging an employee because of disability. Minn. Stat. § 363A.08, subd. 2(2).

Assuming for the purposes of this motion that PTSD might constitute a disability under the statute, there are no factual allegations connecting the dots between Plaintiff's alleged PTSD and her employment, let alone her termination. Plaintiff mentions that she developed PTSD related to gun violence after her aunt's death. (Amend. Compl. ¶ 19.) Then, in a footnote, Plaintiff alleges her "PTSD is public knowledge" and that "it was a topic of discussion" "*as trauma or 'lived experience'* relating to gun violence." (Amend. Compl. ¶ 19, n.1.) However, this footnote does not plausibly allege either *that PTSD* was a topic of discussion with DPS *or* that DPS knew she had PTSD simply because it was "public knowledge." She does not explain how her PTSD was allegedly public knowledge. Discussing "trauma" or "lived experience" with an employer is not the same as discussing a diagnosed disability. Plaintiff does not allege any facts which could give rise to an inference that DPS terminated her because of her PTSD (or any disability).

And, although Plaintiff has pled a "regarded as" disability claim, the amended complaint does not plausibly allege Defendants regarded her as having PTSD. (*See* Amend. Compl. ¶ 92.). To do so, she would have to allege facts showing that Defendants "believed" that she suffered an impairment that materially limited a major life activity and that her impairment was "permanent or long term." *McLain v. Andersen Corp.*, 567 F.3d 956, 968 (8th Cir. 2009); *see also* Minn. Stat. § 363A.03, subd. 12(3). There are no facts showing that DPS believed she had permanent or long-term impairments which

14

materially limited her. The allegation that DPS "*appeared to* have bought into the stereotype that Joseph as a 'nutjob' with PTSD" similarly doesn't show Defendants regarded her as having PTSD, and lacks any factual basis whatsoever. (Amend. Compl. ¶ 57) (emphasis added); *Cole*, 571 F. Supp. 3d at 1040 *citing Drobnak*, 561 F.3d at 784. There is simply no nexus between an unidentified person's "nutjob" comment on the internet and PTSD. There is especially no nexus between such a comment and whether DPS regarded Plaintiff as having a PTSD. (*See* Amend. Compl. ¶¶ 42, 92.) Further, the "naked assertion" that DPS "regarded Plaintiff as having a disability" is a legal conclusion which is insufficient to draw any reasonable inferences in Plaintiff's favor. (Compl. ¶¶ 92); *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 686. Even if DPS knew Plaintiff had PTSD, the "mere awareness of an employee's condition is not sufficient to show that the employer regarded the employee as disabled." *Shane v. Bio-Techne Corp.*, No. CV 22-3039 (JWB/ECW), 2023 WL 3936638, at *7 (D. Minn. June 9, 2023), *citing Carlsen v. Green Thumb, Inc.*, No. 01-2076 (JRT/RLE), 2004 WL 234406, at *5 (D. Minn. Feb. 4, 2004); *Hayes v. Blue Cross Blue Shield of Minn., Inc.*, 21 F. Supp. 2d 960, 972 n.7 (D. Minn. 1998).

Plaintiff has also not plausibly alleged causation. The bare recitation that DPS "fired Plaintiff because of a disability," is not sufficient. (Amend. Compl. ¶ 93.) This allegation is nearly identical to one this court[2] already found failed to meet the pleadings standard. *See Radcliffe v. Securian Fin. Grp., Inc.*, 906 F. Supp. 2d 874, 886 (D. Minn. 2012)

---

[2] Judge Nelson, Case No. 11–CV–3701 (SRN/TNL).

("Plaintiff's allegation that Defendant 'discriminat[ed] against her because of her disability' [] is the type of vague and conclusory allegation that does not pass muster under *Iqbal* and *Twombly,* absent reference to a specific act of discrimination.")

Because Plaintiff has not pled sufficient factual matter to draw reasonable inferences that Defendants regarded her as suffering from PTSD and that Defendants terminated her for that reason, count III should be dismissed.

## CONCLUSION

For these reasons, Defendants request that counts II and III be dismissed with prejudice and that judgment be entered accordingly.


Dated: February 10, 2026                    Respectfully submitted,

                                            KEITH ELLISON
                                            Attorney General
                                            State of Minnesota

                                            s/ Amanda Prutzman
                                            AMANDA PRUTZMAN
                                            Assistant Attorney General
                                            Atty. Reg. No. 0389267

                                            445 Minnesota Street, Suite 600
                                            St. Paul, Minnesota 55101-2125
                                            (651) 757-1217 (Voice)
                                            (651) 282-5832 (Fax)
                                            Amanda.Prutzman@ag.state.mn.us

                                            ATTORNEY FOR DEFENDANTS